IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| ANTHONY KOZIOL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | No. 14 C 6268 |
| | ) | |
| BUCKOWITZ., et al., | ) | Judge Virginia M. Kendall |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Anthony Koziol alleges in his Amended Complaint that Defendants Buckowitz, Jane Doe Night Nurse #1 and #2, John Doe Health Care Unit Staff Member, Dr. Louis Shicker, Dr. Saleh Obaisi, Wexford, and Butkiewciz Health Sources were deliberately indifferent to his serious medical needs in that they failed to treat a staph infection in his leg for over one month in violation of constitutional rights pursuant to 42 U.S.C. § 1983. Koziol is a partial amputee who complained of pain in his leg which he alleges stems from an infection that he contracted from the unsanitary living conditions at Stateville Correctional Facility. Koziol contends that Stateville's policies and practices denied him necessary medical care. Shicker moves to dismiss the Complaint for failure to state a claim in that he alleges no specific instances of conduct are alleged to have been undertaken by him. For the following reasons, Shicker's motion to dismiss is granted without prejudice.

1

## BACKGROUND

In reviewing the sufficiency of the claim the Court treats allegations from the Complaint as true for purposes of the motion to dismiss. *McCauley v. City of Chicago,* 671 F.3d 611, 616 (7th Cir. 2011).

Koziol is a 51-year-old inmate in the custody of the Illinois Department of Corrections and was housed at Stateville Correction Facility in early 2014. (Dkt. No. 23 at ¶ 1.) While there for four months, Koziol lived in unsanitary and unsafe conditions resulting from Stateville's overcrowding that caused a staph infection on his right leg. (*Id.* at ¶¶ 1-2.) His right leg was vulnerable to infection due to a partial amputation from childhood. (*Id.*)

From approximately March 13 to April 7, 2014, Koziol made numerous requests to see a doctor regarding his leg pain. (*Id.* at ¶ 19.) Despite numerous indications from prison personnel that he would be placed on the sick call list, Koziol never saw a doctor. (*Id.*) During that time, Koziol did not receive pain medication or medical treatment. (*Id.*) Koziol eventually filed a prison grievance explaining that he had received no medical attention for the pain in his leg. (*Id.* at ¶ 20.) Despite this grievance, Koziol still received no medical care. (*Id.*) On approximately April 11, 2014, Koziol's pain worsened to a point where he was no longer able to walk. (*Id.* at ¶ 21.) Koziol reported his pain to a correctional officer, who told him that he would be placed on the sick call list. (*Id.*) Koziol, however, did not receive a call to see a doctor. (*Id.*) Later that day, Koziol spoke to his mother, Dolores Brading, on the phone. (*Id.*) He described his pain and how he had submitted multiple requests to see a doctor to no avail. (*Id.*) Following this conversation, Brading twice contacted Buckowitz, Koziol's counselor at Stateville to explain that her son was experiencing extreme pain and had not received medical attention despite several requests. (*Id.* at ¶¶22-23.) In both calls,

Buckowitz assured Brady that Koziol would see a doctor but Koziol still did not receive medical attention. (*Id.*)

Brading then called the Illinois Department of Corrections and was told that the IDOC would contact the warden of Stateville. (*Id.* at ¶ 24.) An assistant warden at Stateville, Ms. Robinson, later called Ms. Brading and promised that a doctor would see Koziol. (*Id.*) By April 15, 2014, Koziol had yet to receive medical attention and the pain had spread down to the middle of his calf rendering him unable to walk. (*Id.* at ¶ 25.) Koziol eventually received treatment at the Health Care Unit where the examining physician diagnosed him with a staph infection. (*Id.* at ¶ 26.) After seeing the doctor, Koziol continued to experience severe pain in his leg. (*Id.* at ¶ 28.) After regaining the ability to walk, the pain persisted over the next two weeks. (*Id.* at ¶ 28.) At a follow-up appointment on April 29, 2014, the examining nurse wrote that Koziol had complained of his "leg getting worse," and indicated that he should see a medical doctor the following day. (*Id.* at ¶ 30.) Koziol never received any further medical attention while incarcerated at Stateville. (*Id.*) He continues to experience pain in his right leg and difficulty walking due to the infection. (*Id.* at ¶ 34.)

Shicker was the medical director for the IDOC during the time Koziol was incarcerated at Stateville NRC. (*Id.* at ¶ 8.) As the IDOC medical director, Shicker was responsible for supervising medical staff at IDOC facilities including Stateville and establishing policies and procedures to ensure that all IDOC inmates received prompt and adequate medical care. (*Id.*)

## LEGAL STANDARD

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the viability of a complaint by arguing that it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss under Rule 12(b)(6), the complaint must provide enough factual information to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). All of the "factual allegations contained in the complaint" must be "accepted as true." *Id*. at 572. Although the allegations need not be "detailed," they must "state a claim to relief that is plausible on its face." *Id*. at 555.

In analyzing whether a complaint meets this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Id*. at 678. When the factual allegations are well-pled, the Court assumes their authenticity and determines if they plausibly give rise to an entitlement to relief. *See id*. at 679. A complaint is facially plausible "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009). However, legal conclusions and "conclusory allegations merely reciting the elements of a claim are not entitled to this presumption of truth." *McCauley v. City of Chicago*, 671 F. 3d 611, 616 (7th Cir. 2011).

## DISCUSSION

In order to establish that a prison official violated the Eighth Amendment, a prisoner must prove that: (1) the injury is sufficiently serious as judged from an objective standpoint, and (2) the prison official was "deliberately indifferent" to an inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To establish deliberate indifference, a plaintiff must allege that the official was aware of and consciously disregarded the plaintiff's medical need. *See id.* at

837.  Further, the well-pled facts must demonstrate that the defendant was "personally responsible for the deprivation of a constitutional right" to be liable under Section 1983.  *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995).  A defendant cannot be liable for a constitutional violation under Section 1983 based on a theory of respondeat superior; but she can be liable if the conduct causing the constitutional deprivation occurred at the defendant's direction or with her knowledge and consent.  *See id.*; *see also, Burks v. Raemisch*, 555 F.3d 592, 594 (7th Cir. 2009) ("Liability depends on each defendant's knowledge and actions, not on the knowledge or actions of persons they supervise.").  Defendants like Shicker who are supervisors are personally responsible for others' actions if they "conduct and facilitate it, approve it, condone it, or turn a blind eye."  *Gentry*, 65 F.3d at 561; *see also, Palmer v. Marion County*, 327 F.3d 588, 594 (7th Cir. 2003) (to demonstrate supervisor liability in a Section 1983 claim, plaintiff must at least show that individual acquiesced in some demonstrable manner in the alleged constitutional violation).

Koziol alleges that Shicker "was responsible for supervising the medical staff at each IDOC correctional facility, including Stateville NRC, and establishing policies and procedures for providing medical services to IDOC inmates."  (Dkt. No. 23 at 4.)  Koziol contends that Defendant Shicker was deliberately indifferent to his serious medical needs by "turning a blind eye to the constitutional violations committed by the medical staff at Stateville and by failing to supervise their conduct to ensure that inmates received medical attention when they needed it." (*Id.* at 13.)  At the motion to dismiss stage, Koziol is not required to prove that Shicker was personally responsible for his constitutional deprivation but allegations beyond "formulaic recitation of the elements" of the claim are.  *See Iqbal*, 556 U.S. at 681; *Burks*, 555 F.3d at 594.  In order to survive Shicker's motion to dismiss, Koziol must allege that Shicker as the IDOC

5

Medical Director caused or consented to the alleged violation of Koziol's Eighth Amendment rights resulting from the IDOC's failure to provide him medical treatment. *Gentry*, 65 F.3d at 561. But Koziol merely alleges that Shicker was deliberately indifferent to his medical needs by turning a blind eye to the constitutional violation and failing to supervise his staff's conduct to ensure that inmates received medical attention. (Dkt. No. 23 at 13.) This allegation does not put Shicker notice of how he was personally responsible for the constitutional violation because Koziol fails to identify how any policies or procedures led to a violation of his Eighth Amendment rights. His alleges that Shicker turned a blind eye to constitutional violations because Koziol interacted with other inmates who struggled to obtain proper medical care. (*Id.*) This generic allegation, however, does not make it plausible that Shicker's actions or knowledge caused constitutional deprivations. *See Burks*, 555 F.3d at 594. It is only conclusory, bare assertions that Shicker is liable under Section 1983 as a the IDOC Medical Director without alleging any fact from which it can be inferred that Shicker knew of or acted deliberately towards Koziol's medical needs. *See, Smith v. Rohana*, 433 F. App'x 466, 469 (7th Cir. 2011) (supervisor was only negligent in mismanaging prion's medical unit and not deliberately indifferent); *see, e.g., Jones v. Feinerman*, No. 09 C 03916, 2011 WL 4501405, at *5 (N.D. Ill. Sept. 28, 2011) (granting motion to dismiss because plaintiff made only conclusory allegations of deliberate indifference by medical director toward him); *Brown v. Randle*, No. 11 C 50193, 2014 WL 2533213, at *9 (N.D. Ill. June 5, 2014) (granting a motion to dismiss finding that reliance by supervisors on grievance officer's recommendation without investigation into plaintiff's medical treatment was not plausibly deliberate indifference).

Unlike the cases cited to by Koziol in his response to Shicker's motion to dismiss, Koziol did not allege that Shicker created the IDOC policies, practices, or customs that caused the

constitutional violations. Instead, Koziol points to his interactions with other inmates about the IDOC's failure to provide medical treatment as evidence of Shicker's supervisory failures, which is insufficient to provide Shicker notice of his alleged deliberate indifference that lead to the constitutional deprivation. *Cf., Doyle v. Camelot Care Ctrs., Inc.*, 305 F.3d 603, 615 (7th Cir. 2002) (denial of motion to dismiss Section 1983 complaint was proper where plaintiff had alleged that supervisory officials were personally "responsible for creating the policies, practices and customs that caused the constitutional deprivations"); *Armstrong v. Squadrito*, 152 F.3d 564, 581 (7th Cir. 1998) (noting that if supervisors had personally created the policy or custom that caused the constitutional violation, then they "*might* face personal liability" under Section 1983); *see, e.g., Postlewaite v. Godinez*, No. 14 C 01281, 2014 WL 6685383, at *4 (S.D. Ill. Nov. 25, 2014) (dismissing Section 1983 complaint against senior prison officials because plaintiff failed to allege that they created the policies, practices, or customs that resulted in the plaintiff's inability to receive medical treatment); *Carpenter v. Brown*, No. 10 C 4683, 2011 WL 6936360, at *2 (N.D. Ill. Dec. 29, 2011) (dismissing Section 1983 claim against supervisory official because "[p]laintiff's allegations about how state habeas petitions for civilly committed persons are docketed suggest a policy or practice for which Defendant may be responsible. A more developed record may demonstrate that she has no control over such docketing procedures, but the court cannot make such a determination at this stage.").

Koziol also points to *Aleman v. Dart* as support for its argument that he has alleged sufficient facts to demonstrate that Shicker is plausibly personally responsible for the violation of his Eighth Amendment rights. (Dkt. No. 60 at 6.) But in that case, the plaintiff alleged that supervisory officials at Cook County Jail acted with deliberate indifference by failing to provide adequate medical care because a U.S. Department of Justice report had found the jail fell below

7

the constitutionally required standards of care. *See, Aleman v. Dart*, No. 09 C 6049, 2010 WL 4876720, at *5 (N.D. Ill. Nov. 23, 2010). The Court denied the officials' motion to dismiss because their failure to correct an unconstitutional policy plausibly demonstrated deliberate indifference. *See id.* In contrast, even viewing the well-pled facts in the light most favorable to Koziol, he does not allege any facts creating the inference that Shicker was aware of the IDOC's failure to provide him or other inmates medical attention in order to establish that Shicker was deliberately indifferent.

Koziol merely cites formulaic, conclusory accusations that are not sufficient to plausibly infer that Shicker acted with deliberate inference toward him as the medical director of IDOC to survive a motion dismiss his Section 1983 claim against Shicker. The Court thus grants Shicker's motion to dismiss Koziol's claim against Shicker in his individual capacity without prejudice. If discovery provides Koziol with the necessary information to amend the Complaint, he should move to amend at a later date.

## CONCLUSION

For the reasons stated herein, the Court grants Shicker's motion to dismiss Koziol's Section 1983 claim against him without prejudice.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 11/13/2015

8